FIRST NAT. BANK OF FT. WAYNE, IND., v. UNION STOCKYARDS
BANK OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department.   May 25, 1910.)

GUARANTY (§ 38*)—EXTENT OF LIABILITY—"CONTINUING GUARANTY."

An agreement by a bank to honor checks of a firm drawn on it and ac-
companying drafts on an individual so long as another bank will protect
the drafts, entered into to extend credit to the firm, is a "continuing
guaranty," unlimited as to time or amount, so long as the latter bank
acts on it, and it is binding on the former bank when acted on by the
latter, and the former may terminate the guaranty at any time before it
has been acted on.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 47;  Dec. Dig.
§ 38.*

For other definitions, see Words and Phrases, vol. 2, p. 1509.]

Appeal from Trial Term, Erie County.

Action by the First National Bank of Ft. Wayne, Ind., against the
Union Stockyards Bank of Buffalo.   From a judgment for plaintiff,
defendant appeals.   Affirmed.

The following is the opinion of Pound, J., at Trial Term:

C. F. Pfeiffer & Son, of Buffalo, N. Y., were large dealers in live stock and
customers of the defendant bank.   J. C. Pfeiffer, of Ft. Wayne, Ind., a person
of limited financial responsibility, was a brother of Stephen F. Pfeiffer,
the manager of the firm.   In August, 1908, the firm had begun to draw drafts
on J. C. Pfeiffer and to obtain credit for them on its account at the defendant
bank, which forwarded same for collection through the plaintiff bank.   Plain-
tiff bank charged such drafts to the account of J. C. Pfeiffer, taking in pay-
ment checks of C. F. Pfeiffer & Son, drawn upon the defendant bank, payable
through the Carnegie Trust Company of New York City, which it placed to
the credit of the J. C. Pfeiffer account and forwarded for collection.   At first
this method of business was apparently followed without any guaranty of the
payment of the checks by the defendant bank;  but on September 28th, the
plaintiff bank having advised defendant bank that certain Pfeiffer drafts in
its hands remained unpaid, defendant bank offered and agreed that if plain-
tiff bank would honor such drafts, amounting to some $24,000, defendant bank
would honor the accompanying checks of C. F. Pfeiffer & Son of like amount
then in the possession of plaintiff bank.   These drafts were thereupon taken
care of by the plaintiff bank, in pursuance of such offer and agreement.   It is
inferable that C. F. Pfeiffer & Son were in need of the brief credit which
this plan afforded them at the defendant bank, and that both banks were
willing to aid them, for a time at least, in carrying it out.

On September 29, 1908, the defendant bank wrote to the plaintiff bank,
expressing dissatisfaction with the "system" of sending these drafts and
checks back and forth in pairs, but suggested that it be continued for the
present, and said: "As long as the drafts drawn against Mr. J. C. Pfeiffer
are protected, the drafts on our account in New York which the firm is send-
ing him you can rely upon being honored when presented for payment."
On September 30th plaintiff bank replied, commenting upon the undesirability
of continuing this plan of apparent "kiting," nevertheless "agreed to honor
their drafts on Mr. J. C. Pfeiffer that may be drawn *up to next Tuesday*"
(October 6th), calling attention to the language above quoted.   On October 1st
defendant bank replied, suggesting that "it will be wise to allow him [Stephen]
to continue this practice until he completes his negotiations for a loan."

Plaintiff bank apparently acquiesced in this suggestion, for on or about Oc-
tober 19, 1908, the C. F. Pfeiffer firm drew a draft in the usual way on Jos-
eph C. for $7,500, deposited it to their credit in defendant bank, and at the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

same time drew their check upon defendant bank, payable to the order of plaintiff bank, through the Carnegie Trust Company, for $7,508, principal of the draft, with interest and exchange, and sent the check to the plaintiff bank to cover the companion draft. Plaintiff bank "protected" the draft by charging the same to J. C. Pfeiffer's account when it arrived at Ft. Wayne, and credited him with the check and forwarded. the check for collection through the usual channels. It was presented for payment in New York on October 23d, and payment refused, through directions from the defendant bank. Meanwhile other drafts and checks in pairs had come along, arriving at plaintiff bank after it had protected the $7,500 draft, and plaintiff bank declined further to protect these drafts. Whereupon, on October 23d, defendant bank wired plaintiff bank: "We will not guarantee payment of any Pfeiffer drafts on New York in your possession or in transit. Act accordingly." Plaintiff bank protested the $7,508 check for nonpayment, and sues the defendant bank to recover thereon, claiming that payment thereof was guaranteed by the latter. C. F. Pfeiffer & Son had meanwhile become bankrupt.

No serious questions of law or fact arise herein after the somewhat complicated facts are duly marshaled. It seems clear that plaintiff bank acted in good faith in protecting the drafts upon the supposed intent of the defendant bank to honor the Pfeiffer checks when presented for payment in New York, and gave credit to J. C. Pfeiffer in reliance upon such supposed intent. It has been held, in such cases, "if the surety left anything ambiguous in his expressions, the ambiguity [must] be taken most strongly against him." Belloni v. Freeborn, 63 N. Y. 383. While the authorities are not wholly unanimous on this rule of construction (Schwartz v. Hyman, 107 N. Y. 562, 14 N. E. 447), I am of the opinion that the correspondence is not ambiguous in the light of the circumstances surrounding the parties, nor strained beyond its obvious meaning when construed as a continuing guaranty covering the check in suit. The guaranty continued as long as plaintiff bank acted upon it, was binding when acted upon, and it could be withdrawn and terminated at any time before it was acted upon. Aside from this, it was unlimited either as to time or amount. The telegram of October 23d was inoperative to terminate the agreement as to the check in suit. No question as to the competency of defendant bank as such to enter into such a contract is raised nor considered.

Plaintiff is entitled to recover. Judgment accordingly.

Argued before McLENNAN, P. J., and SPRING. WILLIAMS, KRUSE, and ROBSON, JJ.

Lewis & Carroll, for plaintiff.
Weimert & Templeton, for defendant.

PER CURIAM. Judgment affirmed, with costs.

